**James Everett Shelton**
**316 Covered Bridge Road**
**King of Prussia, PA 19406**
**(484) 626-3942**
**jeshelton595@gmail.com**

**Plaintiff, Pro Se**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | ) | |
| **316 Covered Bridge Road** | ) | |
| **King of Prussia, PA 19406** | ) | |
| **Plaintiff,** | ) | **Civil Action** |
| | ) | |
| **v.** | ) | **No. 2:18-cv-02759-GEKP** |
| | ) | |
| **IVEST 360, LLC d/b/a FAST CAPITAL 360** | ) | |
| **95 James Way, Suite 113,** | ) | |
| **Southampton, PA 18966** | ) | |
| | ) | |
| **IVEST 360 SYNDICATION GROUP, INC.** | ) | |
| **95 James Way, Suite 113,** | ) | |
| **Southampton, PA 18966** | ) | |
| **Defendants** | ) | **Jury Trial Demanded** |

### PLAINTIFF'S FIRST AMENDED COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. § 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of IVEST 360 d/b/a FAST CAPITAL 360 and IVEST 360 SYNDICATION GROUP, INC. (hereinafter "the IVEST defendants"), in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("ATDS calls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

1

# I.    Introduction

1.     Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.     Plaintiff brings this action to challenge Defendants' practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Defendants' and Defendants' agents' illegal telephone solicitations by which they market their products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and Defendants' failure to maintain a Do-Not-Call policy or DNC list.

3.     The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4.     "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5.     Plaintiff alleges that Defendants placed several telemarketing calls and text messages to Plaintiff's cellular telephone number for the purposes of advertising cash advance or loan services, using an automatic telephone dialing system ("ATDS"), which is prohibited by the TCPA.

6.     Plaintiff never consented to receive any of these calls.

7.     All of the claims asserted herein arise out of Defendants' illegal telephone solicitation campaign and are a common fact pattern.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

## II.   Jurisdiction and Venue

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.     Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County. Plaintiff received the phone calls to his private mobile telephone number as a permanent resident of Montgomery County. Defendants conduct business in this judicial district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484) Pennsylvania area code and is registered to Plaintiff's home address. Defendants are registered to conduct business in the Commonwealth of Pennsylvania and maintain their principal place of business in Bucks County, Pennsylvania, within this Judicial District. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent…; it occurred when the [facsimile] was received."

## III.   Parties

10.    Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

11.    Defendant IVEST 360, LLC ("IVEST") is a Pennsylvania limited liability company with a registered principal address of 95 James Way Suite 113, Southampton, PA 18966. IVEST transacts business in, *inter alia*, Montgomery County, Pennsylvania and is based within this

3

Judicial District. IVEST markets and sells, *inter alia*, business loan and/or merchant cash advance products and services to people in Pennsylvania and nationwide.

12.    FAST CAPITAL 360 is a fictitious name, registered in the Commonwealth of Pennsylvania and owned by Ivest 360, LLC that is used by Ivest 360, LLC and/or Ivest 360 Syndication Group, Inc. to conduct ongoing business activities, from a business location known as 95 James Way, Suite 113, Southampton, PA 18966.

13.    Defendant IVEST SYNDICATION GROUP, INC. ("IVEST") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a registered business address of 95 James Way, Suite 113, Southampton, PA 18966. This defendant is the holding company and/or the alter ego of Ivest 360, LLC, and is another name by which the telemarketers making the calls at issue use to transact business. IVEST markets and sells, *inter alia*, business loan and/or merchant cash advance products and services to people in Pennsylvania and nationwide.

**Background**
**The Telephone Consumer Protection Act**

14.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do-Not-Call Registry

15.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

4

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

17.     The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

18.     According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

19.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be

sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the

consequences of providing the requested consent, i.e., that the consumer will receive future

calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having

received this information, agrees unambiguously to receive such calls at a telephone number

the consumer designates.[] In addition, the written agreement must be obtained "without

requiring, directly or indirectly, that the agreement be executed as a condition of purchasing

any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## IV.   Factual Allegations

20.    The IVEST defendants make loans.

21.    The IVEST defendants use telemarketing to promote their products and services.

22.    Defendants' telemarketing efforts include calling and texting cell phone numbers that are

listed on the National Do-Not-Call registry for more than 31 days prior to the calls.

23.    At all times material hereto, Plaintiff was the subscriber of the telephone number 484-

626-3942 and paid his cell phone bill through T-Mobile.

24.    Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully

registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to

the calls.

25.    On Wednesday, May 30, 2018 at 8:12 AM, Plaintiff received an unsolicited text message

from 215-929-8399 to his cell phone, 484-626-3942. The text message read: "Hi James, it's

Mark from Fast Capital 360. Thanks for choosing us for your funding needs. Give me a call at

(646) 650-5960 to discuss your funding options."

26.     Plaintiff was asleep and did not see this text message immediately.

27.     At 8:16 AM, Plaintiff received an e-mail to his business e-mail address,

james@finalverdictsolutions.com from ml@fastcapital360.us. The e-mail said:

Hi James,
Thank you for applying with Fast Capital 360. My name is Mark Lauer I will be walking you
through every step of the funding process.

Please call me to complete the process. You can reach me at 646.650.5960.

Thank you and I look forward to hearing from you,

Mark Lauer | Business Advisor
**P:** 646.650.5960
**E:** ml@fastcapital360.us

28.     Plaintiff did not view the e-mail right away, as he was still asleep.

29.     On May 30, 3018 at 8:31 AM, Plaintiff received a call from 610-924-2696. Upon

answering, Plaintiff heard a brief click and pause, before a human being arrived on the phone

line. For this reason, Plaintiff believes and therefore avers that automated dialing technology was

used to make the calls at issue. A click and pause is indicative of a predictive dialer making the

call and transferring said call over to a live human being.

30.     Plaintiff then spoke to "Mark Lauer" at Fast Capital 360. Mr. Lauer made a scripted sales

pitch about business funding.

31.     During that call, Mr. Lauer indicated that Plaintiff had filled out a form requesting

information about business funding provided by Fast Capital 360. Plaintiff was confused because

he had not filled out any forms or made any inquiries about funding.

32.     As a result of this call, "Mark Lauer" sent Plaintiff another e-mail at 8:32 AM.

7

33.     As a result of this call, "Mark Lauer" sent Plaintiff another e-mail at 8:37 AM.

34.     On May 30, 2018 at 2:18 PM, Plaintiff received another telemarketing call from 610-924-2696, the same number which Fast Capital 360 used to call at 8:31 that morning. Upon answering, the call disconnected. Plaintiff believes this call was of an automated nature because the call immediately disconnected almost as soon as he answered.

35.     On Thursday, May 31, 2018 at 11:01 AM, "Mark Lauer" sent Plaintiff another e-mail.

36.     On May 31, 2018 at 4:57 PM, Plaintiff received a telemarketing call from 610-924-2696, the same number which Fast Capital 360 used to call previously. Upon answering, the call disconnected, just like before.

37.     On June 1, 2018 at 2:47 PM, Plaintiff received a telemarketing call from 610-924-2696. Upon answering, the call disconnected, just like before.

38.     On June 1, 2018 at 2:57 PM, Plaintiff received another e-mail from "Mark Lauer".

39.     At all times material herein, Plaintiff received all of the calls complained of in this case on his cellular telephone number, (484) 626-3942. This is the only telephone number Plaintiff owns.

40.     Prior to these unsolicited calls, the Plaintiff has never done any business with the IVEST defendants and Plaintiff never provided one or more of Defendants with his cellular telephone number.

41.     Defendants did not have the Plaintiff's prior express written consent to make these calls.

42.     In fact, before filing this lawsuit, the Plaintiff wrote to the IVEST defendants asking if they had his prior express written consent to make the calls, but the IVEST defendants did not provide any evidence of consent.

8

43.     Plaintiff also requested in his e-mail to receive a copy of the IVEST defendants' internal company Do-Not-Call policy.

44.     The IVEST defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

45.     Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

46.     Pursuant to 47 CFR 64.1200(d)(3), a telemarketer is required, upon request, to place a consumer's telephone number on an internal "Do-Not-Call List".

47.     Defendants failed and/or refused to place Plaintiff's number on their internal Do-Not-Call list, despite a written request and a lawsuit.

48.     Plaintiff filed this lawsuit on June 28, 2018. Defendants appeared through counsel and filed an Answer and Affirmative Defenses on July 19, 2018.

49.     Despite being on notice that Plaintiff was suing the IVEST defendants for violations of the TCPA, the IVEST Defendants did not stop contacting the Plaintiff using an ATDS.

50.     On August 9, 2018 at 11:40 AM, Plaintiff received an automated text message ("robotext") from the defendants using the SMS short code 622-69. The text message stated as follows:

> Hi, Your business is pre-approved for funding – way to go! To estimate your terms, tap here to visit myfc360.com or call 800-735-6107 to speak directly with an advisor.
> -----
> Reply STOP to Opt Out of text messaging service

51.     Defendants own and/or use the website myfc360.com to advertise their products and services.

52.     Defendants' use the phone number 800-735-6107 during the normal course of business.

9

53.     This robotext message was clearly made as part of a mass text messaging marketing campaign, and was not manually typed and sent. To the contrary, it was made using an automated text messaging service.

54.     Defendants knew that Plaintiff was suing them for TCPA violations, yet they failed to scrub Plaintiff's number from their automated system(s). This constitutes a knowing and willful violation of the TCPA.

55.     To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on National do-not-call rules, training personnel on National do-not-call rules, maintaining an internal do-not-call list, and accessing the National do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Defendants inquiring about the calls before filing this lawsuit.

56.     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

57.     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

58.     These telephone solicitations constituted "calls" under the TCPA that were not for

emergency purposes.

59.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff, and woke him up in the morning. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS call / Robotext" Prohibition, 47 U.S.C. § 227

et seq.)

60.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

61.      As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

62.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS call/ Robotext" Prohibition, 47 U.S.C. § 227 et seq.)

63.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

64.     As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

65.      Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

66.      Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

67.      As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

68.      Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

69.      Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70.      As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

71.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**Fifth Cause of Action**

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

72.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

73.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

**Sixth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

74.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

75. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**Seventh Cause of Action**

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

72.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

73.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

**Eighth Cause of Action**

(Knowing and/or Willful Violation of the TCPA

13

"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

74.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

75.     As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00

for each and every violation, pursuant to the implied private right of action.

**<u>WHEREFORE, Plaintiff prays for relief against defendants, as follows:</u>**
**V.          <u>Prayer for Relief</u>**

On Causes of Action 1-8:

    1.  For awards of $500 for each negligent violation as set forth in actions 1-8.

    2.  For awards of $1,500 for each knowing and/or willful violation as set forth in actions

1-8.

    3.  Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: **<u>$21,000</u>** (Six counts of "Sales call/ Sales Text Message to a number

registered on the National Do-Not-Call Registry", Six counts each of "ATDS call/ robotext

message", and one count each of "Failure to provide a copy of Defendant's Do-Not-Call Policy"

and "Failure to Put Plaintiff's Number on Defendants' internal Do-Not-Call list", with treble

damages for each).

    4.  Prejudgment interest at the maximum legal rate;

    5.  Costs of suit herein incurred; and

    6.  All such other and further relief as the Court deems proper.

## VI.    <u>Demand for Jury Trial</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: August 13, 2018

_James E. Shelton_

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

15

## **VERIFICATION**

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: August 13, 2018

_James E. Shelton_

JAMES EVERETT SHELTON